## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| 1. **PATRICIA PFAU,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| v. | ) | **CIV-14-**1376-C |
| | ) | |
| 1. **SODEXO OPERATIONS, LLC, and** | ) | |
| 2. **MARK COULTER,** | ) | |
| | ) | **ATTORNEY LIEN CLAIMED** |
| **Defendants.** | ) | **JURY TRIAL DEMANDED** |

## COMPLAINT

**COMES NOW** the Plaintiff, Patricia Pfau, and for her Complaint in the above-entitled action, alleges and states as follows:

## PARTIES

1.      Plaintiff, Patricia Pfau, is an adult female resident of Cleveland County, Oklahoma.

2.      The Defendants are:

(a) Sodexo Operations, LLC is an entity doing business in Cleveland County, Oklahoma ("Sodexo"); and

(b) Mark Coulter, an individual employed by the Defendant.

## JURISDICTION AND VENUE

3.      This is a cause of action arising out of Plaintiff's former employment with Defendant Sodexo and is based on claims of (a) age discrimination in violation of the Age Discrimination in Employment Act ("ADEA"), (b) disability discrimination in violation of

1

the ADA and ADAAA, (c) gender discrimination in violation of Title VII of the Civil Rights Act of 1964, as amended, (d) retaliation for opposition to unlawful employment practices in violation of Title VII of the Civil Rights Act of 1964, as amended, (e) whistleblowing in violation of Oklahoma state law, and (f) the tort of assault.

4.      This Court has jurisdiction over Plaintiff's federal claims pursuant to 28 U.S.C. §1331.  This Court has supplemental jurisdiction over Plaintiff's corresponding state law claim as it arises out of the same core of operative facts as the federal claims, and jurisdiction over it is vested in this Court under 28 U.S.C. § 1367(a).

5.      All of the actions complained of herein occurred in Cleveland County, Oklahoma.  Defendant is doing business in such county and may be served in said county.  Cleveland County is located in the Western District of Oklahoma.  Wherefore, venue is proper in this Court under 28 U.S.C. § 1391(b).

6.      Plaintiff has exhausted her administrative remedies by timely filing a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") on or about September 16, 2014.  Plaintiff received her Dismissal and Notice of Rights letter from the EEOC dated November 14, 2014 (received by Plaintiff by mail thereafter) and has timely filed this action within ninety (90) days of receipt of the notice of right to sue.

## STATEMENT OF FACTS

7.      Pfau was hired as an Administrative Assistant at Defendant Sodexo's location in Norman, OK on or about July 30, 2007.

2

8.      Defendant Sodexo contracts with the Norman Public School District to provide cafeteria services for schools.  Pfau's job duties as an Administrative Assistant included hiring cafeteria staff and ensuring all pre-hire paperwork, including but not limited to background checks, were performed.

9.      Pfau's job performance during her employment was at least satisfactory, if not excellent.

10.     In or around August 2013, Defendant Coulter became General Manager.  As such, Coulter became Pfau's immediate supervisor.

11.     During her employment under Coulter, Pfau was subjected to unequal terms and conditions of employment based on her gender.  For instance, Coulter made Pfau take an unpaid lunch break, stating that all employees were required to do so.  However, Warehouse Manager Steve Mata (Male) was not required to take an unpaid lunch break. Mata was also not disciplined for working overtime without prior approval.  Female employees were only allowed to take overtime with prior approval from Coulter.

12.     Age discrimination also occurred while Pfau was employed with Defendant. For instance, Coulter made comments to Pfau indicating that he did not want older individuals to be hired.  On one occasion, an older female employee resigned after working for a short period of time in a cafeteria.  The employee indicated that she could not perform the physical duties of the position.  Coulter told Pfau that she should not have hired the woman and asked why she hired "those people."  Pfau stated that she could not decline to

hire based on appearances, i.e., because the employee was older or had a physical impairment. Pfau told Coulter that she discussed in detail the nature of the position and that the woman said she could perform the work. In response, Coulter told Pfau he would put her to work in a kitchen so she understood the physical nature of the job.

13.     Pfau was extremely offended by Coulter's comment that she be sent to work in a cafeteria. Coulter was aware that Pfau suffers from rheumatoid arthritis and that Pfau occasionally used a cane at work.

14.     Pfau also observed Coulter engaging in other questionable hiring practices. For instance, Coulter insisted that employees be sent to work before the employees obtained a food handlers card (which is required by the Oklahoma Department of Health). When Pfau expressed concern to Coulter about this, Coulter told Pfau that she was too "black and white" and that Pfau should learn how to operate in a "gray area."

15.     In or around May 2014, Pfau discovered that a driver made a racially offensive comment about a newly hired employee. Specifically, the driver said that the new employee may not be able to read because of his Middle Eastern descent. Pfau reported this comment to Coulter. In response, Coulter asked, "so, what do you want me to do about it?"

16.     In or around early September 2014, a long-term employee met with Coulter and Pfau, stating that he was told to resign. The employee was in his sixties (60s) and walked with a visible limp. However, he was able to perform the essential functions of his job as an employee in the central warehouse kitchen. Concerned that his supervisor may have asked

him to resign because of his age and medical conditions, Pfau asked him what he meant in saying that he was "told to resign."  However, Coulter cut Pfau off and told her to get the employee a resignation form.  Pfau asked the employee whether he wanted to give two (2) weeks notice, and Coulter shook his head at the employee, prompting him to say he would resign immediately.

17.     Coulter made prior comments indicating he was eager for this employee to resign.  Specifically, he made comments stating that whomever hired this employee "should be shot."

18.     For several years, Pfau has suffered from rheumatoid arthritis.  As a result, she occasionally used a cane and/or wore wrist braces at work.  Due to this condition, Pfau is a qualified individual with a disability within the meaning of the Americans with Disabilities Act ("ADA") and the ADA Amendments Act ("ADAAA"), in that she was disabled, has a record of disability, and/or was perceived as disabled. Further, her disabilities substantially limit and/or limited her in one or more major life activities, including but not limited to walking, using her hands, and sleeping. Her disabilities impact one or more of her internal bodily processes, including but not limited to her musculoskeletal function and nervous system function.  However, at all times relevant hereto, she was able to perform the essential functions of her job with or without reasonable accommodations.

19.     On or about September 11, 2014, Pfau met with Coulter and Receptionist Toni Peeri to discuss Coulter's practice of allowing newly hired employees to work without proof

of their food handlers card.  Pfau and Peeri expressed concern because it was very difficult to ensure newly hired employees had a card after the employee was already permitted to work.  Ultimately, Coulter agreed to allow Pfau to tell newly hired employees they would not be sent to work without presenting a card.

20.     Following this meeting, Pfau asked Coulter whether a female employee could be issued her paycheck a day early.  The day before, Coulter issued an early pay check to a male employee.  Coulter promptly became irate, jumped up from his desk shouting that Pfau was "holding that against [him], this is f**king ridiculous" and pounded his fist on the desktop.  Coulter then shouted he "[had] to get out of here" and left the building,

21.     Coulter's uncontrollable and violent outburst caused Pfau to be extremely concerned for her future safety.  Due to his prior actions related to older employees, his disparate treatment of women, and fear for her personal safety, Pfau was forced to resign from her employment.

22.     As a direct and proximate result of Defendant's actions, Plaintiff has suffered the injuries described hereafter.

### COUNT I - ADEA

For her first cause of action, Plaintiff incorporates all prior allegations and further alleges and states as follows.

23.     The matters alleged above constitute violations of the ADEA in the form of age discrimination and retaliation for complaining of the same.

6

24.     Plaintiff is entitled to relief under the ADEA because, at all times relevant to this action, she was over the age of forty (40), was qualified for her job, was disciplined and constructively discharged, and her position was not eliminated.

25.     Plaintiff was retaliated against because she engaged in the protected activity by notifying Coulter that she would not discontinue hiring older workers due to their appearance, was constructively discharged, and there was a causal link between Plaintiff's protected act and her constructive discharge.

26.     As damages, Plaintiff has suffered lost earnings, past and future, and other equitable and compensatory damages allowed by the Civil Rights Act of 1991.  Plaintiff is also entitled to liquidated damages based upon Defendant's willful conduct in violating the ADEA.

## COUNT II - ADA AND ADAAA

For her second cause of action, Plaintiff incorporates all prior allegations and further alleges and states as follows:

27.     The matters alleged above constitute discrimination based on a disability, a record of a disability and/or perceived disabilities in violation of the ADA and ADAAA.

28.     As shown above, Plaintiff was a qualified individual with a disability in that she suffers from one or more physical impairments which substantially limit her ability to perform one or more major life activities and impact one or more internal bodily processes.

29.     Despite said impairments, Plaintiff could perform the essential functions of her

7

job with or without reasonable accommodations at all relevant times hereto.

30.     As a direct and proximate result of Defendant's actions, Plaintiff has suffered lost income, past and future, emotional distress and other non-pecuniary losses.

31.     Because the actions of Defendant were willful, wanton or, at the least, in reckless disregard of Plaintiff's rights, Plaintiff is entitled to punitive damages (to the extent available).

### COUNT III - Title VII Gender Discrimination

For her third cause of action, Plaintiff incorporates all prior allegations and further alleges and states as follows:

32.     The matters alleged above constitute violations of Title VII of the Civil Rights Act of 1964 in the nature of gender discrimination and retaliation.

33.     Plaintiff is entitled to relief under Title VII because she is female, was qualified for her job, was constructively discharged, and her position was not eliminated.

34.     Plaintiff was retaliated against because she engaged in the protected activity by notifying Coulter that she would not discontinue hiring older women due to their appearance, was constructively discharged, and there was a causal link between Plaintiff's protected act and her constructive discharge.

35.     As damages, Plaintiff has suffered lost earnings, past and future, emotional distress and other equitable and compensatory damages allowed by the Civil Rights Act of 1991.

36.     Because the actions of the Defendant were willful, wanton or, at the least, in reckless disregard of Plaintiff's rights, the Plaintiff is entitled to punitive damages as provided by the Civil Rights Act of 1991.

## COUNT IV - Title VII - Opposition to Unlawful Practices

For her fourth cause of action, Plaintiff incorporates all prior allegations and further alleges and states as follows:

37.     The matters alleged above constitute a violation of 42 U.S.C. 2000e-3(a) for retaliating against Plaintiff for her opposition to Defendant's unlawful employment practices, including but not limited to Plaintiff's refusal to deny hire to older women and/or individuals with disabilities.

38.      As damages, Plaintiff has suffered lost earnings, past and future, and emotional distress.

39.     Because the actions of the Defendant were willful, wanton or, at the least, in reckless disregard of Plaintiff's rights, Plaintiff is entitled to punitive damages as provided by the Civil Rights Act of 1991.

## COUNT V - Whistleblowing

For her fifth cause of action, Plaintiff incorporates all prior allegations and further alleges and states as follows:

40.     The acts above-described also constitute a violation of Oklahoma's public policy which prohibits wrongful termination and retaliation against a whistle-blower for

performing an act consistent with a clear and compelling public policy, i.e., refusing to participate in an illegal activity; performing an important public obligation; exercising a legal right or interest; exposing some wrongdoing by the employer; and performing an act that public policy would encourage or, for refusing to do something that public policy would condemn.

41.     As damages, Plaintiff has suffered lost earnings, past and future, and other compensatory damages.

42.     Because the actions of the Defendant were willful, wanton or, at the least, in reckless disregard of Plaintiff's rights, Plaintiff is entitled to punitive damages.

## COUNT VI - ASSAULT

For her sixth cause of action, Plaintiff incorporates all prior allegations and further alleges and states as follows:

43.     This Count goes against Defendant Coulter.

44.     The acts described above constitute the tort of assault.

45.     As damages, Plaintiff is entitled to all damages allowed by state law.

## REQUEST FOR RELIEF

**WHEREFORE,** Plaintiff prays that this Court enter judgment in favor of the Plaintiff and against the Defendant and assess actual, compensatory, punitive damages, and liquidated damages, together with pre- and post-judgment interest, costs, attorney's fees and such other relief as this Court may deem equitable and appropriate.

10

**RESPECTFULLY SUBMITTED THIS 12th DAY OF DECEMBER, 2014.**

s/Jana B. Leonard
JANA B. LEONARD, OBA# 17844
LAUREN W. JOHNSTON, OBA #22341
LEONARD & ASSOCIATES, P.L.L.C.
8265 S. WALKER
OKLAHOMA CITY, OK 73139
(405) 239-3800      (telephone)
(405) 239-3801      (facsimile)
leonardjb@leonardlaw.net
johnstonlw@leonardlaw.net

JURY TRIAL DEMANDED
ATTORNEY LIEN CLAIMED