## IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF OKLAHOMA

PATRICIA PFAU,                    )
                                  )
         Plaintiff,            )
                                  )
v.                                )
                                  )    Case No. CIV-14-1376-C
SODEXO OPERATIONS, LLC,           )
and                               )
MARK COULTER,                     )
                                  )
        Defendants.          )

## DEFENDANT MARK COULTER'S
## MOTION FOR SUMMARY JUDGMENT

Last September the plaintiff and coworker Toni Peery attended a morning meeting

with Sodexo General Manager Mark Coulter, in Mr. Coulter's office.  Mr. Coulter was

behind his desk throughout the meeting.  The plaintiff was standing in the doorway, more

than eight feet away from Mr. Coulter.  (*See* Ex. 2(A) and (B)).  At the end of the

meeting Mr. Coulter began feeling "attacked" when the plaintiff challenged his decision

not to allow an employee to receive a paycheck early, and he admittedly "lost his cool."

Mr. Coulter expressed frustration at the time by slamming his fist on his desk and saying

one curse word.  He then said, "I have to leave.  I can't deal with this . . . " and he

promptly left the building.

Although the plaintiff was more than eight feet away from Mr. Coulter during the

meeting, and although Mr. Coulter undisputedly never made threatening gestures at or

toward the plaintiff, she nonetheless somehow claims that Mr. Coulter committed the tort

of *assault* toward her.  (*See* Complaint [Doc. 1], Count VI).  However, as discussed

below, Mr. Coulter's conduct falls well short of an assault tort – both because Mr. Coulter undisputedly did not intend to place the plaintiff in fear of immediate harmful physical contact, and because the plaintiff was admittedly never in fear of such immediate harmful physical contact.

The parties previously gave sworn testimony at an unemployment hearing, and they each offered complete descriptions of the September meeting in Mr. Coulter's office.  Thus, the following motion for summary judgment is based upon the parties' sworn testimony, attached hereto, which was provided in large part in response to the plaintiff's counsel's questioning.  (*See* 11/18/14 Hearing Tr., Ex. 1).

## MOTION FOR SUMMARY JUDGMENT STANDARD OF REVIEW

Summary judgment is proper if the moving party shows that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  "Under the summary judgment standard, a mere factual dispute will not preclude summary judgment; instead, there must be a genuine issue of material fact." *Cooperman v. David*, 214 F.3d 1162, 1164 (10th Cir. 2000).   A fact is material if it affects the disposition of the substantive claim.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 247 (1986).

The party seeking summary judgment bears the initial burden of demonstrating the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any . . ." that demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)(citation omitted).   To oppose summary judgment, plaintiffs

must do more than provide their subjective interpretation of the evidence, they must marshal admissible evidence of a material fact." *Luster v. Vilsack*, 667 F.3d 1089, 1094 (10th Cir. 2011).

"Summary judgment is appropriate if the non-moving party cannot adduce probative evidence on an element of its claim upon which it bears the burden of proof." *Rohrbaugh v. Celotex Corp.*, 53 F.3d 1181, 1183 (10th Cir. 1995)(citation omitted). "Unsupported conclusory allegations, however, do not create an issue of fact." *MacKenzie v. City and County of Denver*, 414 F.3d 1266, 1273 (10th Cir. 2005).

## STATEMENT OF UNDISPUTED MATERIAL FACTS

1.      According to the plaintiff, General Manager Mark Coulter committed the tort of *assault* during a meeting in his office on the morning of Thursday, September 11, 2014.   Three people were present in the meeting: Mr. Coulter, the plaintiff, and receptionist (administrative assistant) Toni Peery.  (*See* Complaint [Doc. 1], ¶¶ 19-21, 43-44).

2.      In an unemployment hearing held last November, the plaintiff gave the following sworn testimony (in response to her attorney's questioning) describing the details of the alleged assault by Mr. Coulter:

| | |
|---|---|
| Question: | You submitted your resignation on September 11th of 2014; is that right? |
| Answer: | Yes. |
| Question: | Can you tell me what happened that day? |
| Answer: | Yes.  I had an -- there was an employee that had not been to work for several days.  She called and said she was coming by for a different |

3

reason.  And -- and I asked Mr. Coulter -- because this employee was not at work that day. And I said, "May I -- can I give her her paycheck when she comes?"  Because I felt that she was going to ask for it.  It was the day before our normal payday.

And that's what -- and when I asked him that, he was outraged and he asked me -- you know, specifically, I'm trying to remember exactly what he said. I believe he said, "When is payday?"  I said, "It's tomorrow." Then his response was, "Why would you give her her check today?" I said, "Because yesterday you gave another employee their paycheck."

And he just was extremely outraged.  Said, "You are F'g holding that against me." Jumped up, slammed his fists on the desk and said, "I have got to get out of here."  And just rushed past me and actually did leave the building.

Question:     So when you said F'g, did he say fucking?

Answer:       Yeah, he did.

. . . .

Question:     At that time, did you have fear for your personal safety?

Answer:       Yes.  I have never had anyone - - I had never seen a violent outburst like that, and certainly not one directed at me.

(11/18/14 Tr. 18:11-19:9, 19:22-20:1, Ex. 1).

3.     The plaintiff's fear that day was for "her future safety."  (*See* Complaint [Doc. 1] at ¶ 21)("Coulter's uncontrollable and violent outburst caused Pfau to be extremely concerned for *her future safety*.") (emphasis added).

4.     The plaintiff was standing in the doorway during the meeting:

Question:     If you would, would you provide some information as far as where the placement was within the office where Mr. Coulter was located and where you were located when this took place?

Answer:       He was behind his desk.  I was in the doorway.

Question:     So there was nothing between you and being able to exit the office?

4

<u>Answer</u>:      At that moment, no.

(*See* 11/18/14 Tr. 26:4-13, Ex. 1).   The doorway, where the plaintiff was standing, is at least eight (8) feet from Mr. Coulter's desk.  (Affidavit of Mark Coulter, Ex. 2, at ¶ 8, and accompanying photograph [Exhibit B to Affidavit]).

5.      In the unemployment hearing Mr. Coulter testified that he agrees, for the most part, with the plaintiff's description of the September 11th meeting, and he acknowledges he "lost [his] cool" after feeling "attacked" when the plaintiff challenged his decision not to allow an employee to pick up a paycheck one day early:

> . . . . So when we got done having those conversations is when -- we were getting ready to leave the office.  We -- we had finished the conversation. Her and the other employee were getting ready to leave the office.  And she turned around and at that point made reference to the fact of me giving out paychecks.  I said, no, paycheck payday is Friday.  And then she turned around at me and said, "Well, what about Wade?"  And I said -- I guess at that point I just took it that I was being attacked.  I took it that I was being challenged at everything that I do and I lost my cool.
>
> I will not disagree that at that particular point I lost my cool, slammed my fist on the desk.  I said, "You fucking crossed the line."  And I said, "I have to leave, I can't deal with this."
>
> I got up, I walked out of the office and I removed myself so that I could go calm down about the confrontation.

(*See* 11/18/14 Tr. 34:24 - 35:20, Ex. 1) (testimony given by Mark Coulter in response to the plaintiff's counsel's questioning).

6.      Mr. Coulter remained behind his desk throughout the incident, and he stood up only when walking out of the office:

> <u>Question</u>:    Mr. Coulter, when -- going back to the outburst that you described, did you stand up?

<u>Answer</u>:        Not at first, no.  I was sitting at my desk.  I slammed my fist on the desk.  I said, "You fucking crossed the line."  And then I stood up and said, "I've got to get out of here," and walked directly out of the office.

(11/18/14 Tr. 39:18-40:1, Ex. 1) (testimony given in response to questioning by the hearing officer).

7.       Toni Peery was standing near or next to the plaintiff throughout the September 11th meeting with Mr. Coulter, and she personally witnessed the entire incident.  Ms. Peery never felt threatened at any time during the meeting.  (Affidavit of Toni Peery, Ex. 3, at ¶ 5.)

8.       Mr. Coulter never raised his hands at or toward either the plaintiff or Ms. Peery; Mr. Coulter never made any threatening gestures toward either of them; Mr. Coulter never lunged at or toward either of them.  Instead, from the moment Mr. Coulter said "I've gotta get out of here," all of his movements were aimed at his leaving the office and distancing himself from the situation.  (*See* Affidavit of Toni Peery, Ex. 3, at ¶ 6;  *accord,* Plaintiff's Responses to OESC Fact Finding Questions, Ex. 4, at p.2 ("I just wanted to leave before he became violent.  I didn't feel like I had the opportunity.  He said *'I (he) have to leave'* and he immediately left the office."))

9.       Mr. Coulter never attempted to make or threaten physical contact with the plaintiff at any time, and he never intended to put the plaintiff in fear of immediate or imminent physical contact – harmful, offensive, or otherwise.  (*See* Affidavit of Mark Coulter, Ex. 2, at ¶ 5; *accord* Complaint, [Doc. 1], at ¶ 21 (the plaintiff alleging only that she was fearful for her "future" safety)).

## ARGUMENT AND AUTHORITIES

**I.   THE ASSAULT CLAIM FAILS AS A MATTER OF LAW, GIVEN THE UNDISPUTED FACTS ESTABLISHED BY THE PLAINTIFF'S SWORN TESTIMONY.**

Under Oklahoma common law, "An actor is subject to liability to another for [the common law tort of] assault if:

(1)   He acts *intending to cause a harmful or offensive contact* with the person of the other or a third person, or *an imminent apprehension of such a contact*; *and*

(2)   The other is thereby *put in such imminent apprehension*.

*Brown v. Ford*, 905 P.2d 223, 229, fn. 34 (Okla. 1995)(quoting the Restatement (Second) of Torts, § 21 (1 (a) and (b)))(emphasis added).

Neither element of an assault tort is satisfied by the undisputed material facts in this case.

**A.   The First Element of an Assault Claim Cannot Be Met, as a Matter of Law, Because Mr. Coulter Undisputedly Did Not Intend to Cause *Harmful or Offensive Physical Contact* with the Plaintiff, or Place Her in Fear of Such Imminent Contact.**

According to Oklahoma Uniform Jury Instruction ("OUJI") 19.3, "A person intends to put another in apprehension of a [harmful/offensive] contact if [he/she] purposely does any act to place the other in such apprehension, or acts with knowledge that such apprehension will probably result." *See* Restatement (Second) of Torts § 21 Assault (1965), Comment on Subsection (1)(d) ("An act is done with the intention of putting the other in apprehension of an immediate harmful or offensive contact if it is done for the purpose of causing such an apprehension or with knowledge that, to a substantial certainty, such apprehension will result.")

During the meeting in question last September, Mr. Coulter undisputedly *never* attempted to make or threaten physical contact with the plaintiff, and he never intended to put the plaintiff in fear of immediate or imminent physical contact – harmful, offensive, or otherwise.  (*See* Fact 9).  Instead, the only physical contact Mr. Coulter ever intended to make or did make was with his desk – while the plaintiff was standing in the doorway at least eight feet away.  (*See* Fact 4).

In fact, all eyewitnesses (including the plaintiff) agree that, after Mr. Coulter hit his desk, his movements thereafter were all directed toward his leaving the office and departing from the situation.  (*See* Fact 2 (plaintiff's hearing testimony: "[Coulter] jumped up, slammed his fists on the desk and said, 'I have to get out of here.' And just rushed past me and actually did leave the building."); Fact 8 (Plaintiff's responses to OESC questionnaire: "He said *'I (he) have to leave'* and he immediately left the office."); Toni Peery Affidavit, Ex. 3, ¶ 6 ("from the moment Mark said, "I've gotta get out of here" all of his movements seemed to be aimed at his leaving the office and distancing himself from the situation."))

Thus, Mr. Coulter undisputedly never intended to place the plaintiff in fear of immediate physical contact, and the plaintiff cannot satisfy the first element of an assault tort as a result.  *See, e.g., Balas v. Huntington Ingallis Indus*., 711 F.3d 401, 412 (4th Cir. 2013) (dismissing on summary judgment an assault claim against an employee who hugged the plaintiff, and finding that "The circumstances indicate that the requisite intent was absent.")

**B.**   **The Second Prima Facie Element of an Assault Complaint Cannot Be Met, Because The Plaintiff Was Never in Fear of *Imminent Physical Contact* From Mr. Coulter, and the Complaint Concedes as Much.**

OUJI 19.2 explains that "apprehension" for assault purposes is "a state of mind created by the conduct of another which causes a person to feel that, considering all the circumstances, [he/she] will be subject to an *immediate* [harmful/offensive] contact by the other person."   Based upon the undisputed facts, the plaintiff could not possibly have been in fear – and admittedly *was not in fear* – of imminent harmful or offensive contact during the incident.   The description of the incident given by both the plaintiff and eyewitness Toni Peery confirm that this was the case.

Indeed, the plaintiff could not have feared immediate physical contact by Mr. Coulter, because Mr. Coulter was behind his desk and more than eight feet away from the doorway where the plaintiff was standing, when he hit his hands on the desk.  (*See* Fact 4).  Moreover, the plaintiff could not have been in fear of an immediate physical contact, because Mr. Coulter never raised his hands at or toward either the plaintiff or Ms. Peery; he never made any threatening gestures toward either of them; and he never lunged at or toward either of them.  (*See* Fact 8).  Instead, as discussed above, Mr. Coulter's actions were aimed at his "leaving the office and distancing himself from the situation."  (*See* Toni Peery Affidavit, Ex. 3, ¶ 6.)

Most tellingly, the plaintiff has never even claimed that she feared Mr. Coulter was about to make physical contact with her in his office.  Instead, she admits she was only "concerned for her *future safety*."  (*See* Fact 3).  However, the fear of *future* harm does not satisfy the second element of assault, which requires a fear of an *imminent* or

*immediate* offensive or harmful touching. *See, e.g., Brower v. Ackerly*, 943 P.2d 1141, 1145 (Wash. App. 1997) (citing Restatements and explaining, "The apprehension created must be one of imminent contact, as distinguished from any contact in the future.")

For these reasons, Mr. Coulter's actions during the meeting in question fall well short of the type of physical gestures or threats toward another, within close proximity, such to create a fear of imminent touching, such to satisfy the second element of an assault tort. *See, e.g., Balas, supra*, 711 F.3d at 412 (explaining that assault requires conduct that causes "an objectively reasonable apprehension of an imminent battery," and finding that "any apprehension of an imminent battery [the plaintiff] might have felt was not objectively reasonable.")

<u>**CONCLUSION**</u>

Although Mr. Coulter's behavior during the morning meeting was, by his own admission, less than professional, he undisputedly did not commit the tort of *assault* toward the plaintiff, who was standing in a doorway, across the room, eight feet away, at the time.

Based upon the undisputed material facts and the authorities cited above, Mr. Coulter therefore requests the Court to dismiss the assault claim against him on summary judgment.

Respectfully Submitted,

s/Jeremy Tubb_____
Jeremy Tubb, OBA #16739
Matthew S. Panach, OBA #22262
FULLER TUBB BICKFORD & KRAHL PLLC
201 Robert S. Kerr, Suite 1000
Oklahoma City, OK 73102
(405) 235-2575
(405) 232-8384 (facsimile)
jeremy.tubb@fullertubb.com
panach@fullertubb.com
*Attorney for Defendants Sodexo*
*Operations, LLC, and Mark Coulter*

## CERTIFICATE OF SERVICE

I hereby certify that on this 2nd day of February, 2015, I electronically transmitted the foregoing document to the Court Clerk using the ECF System for filing.  The Court Clerk will transmit a Notice of Electronic Filing to the following ECF registrants:

Jana B. Leonard
Lauren W. Johnston
Leonard & Associates, P.L.L.C.
8265 S. Walker
Oklahoma City, OK 73139
(405) 239-3800 (telephone)
(405) 239-3801 (facsimile)
leonardjb@leonardlaw.net
johnstonlw@leonardlaw.net

s/Jeremy Tubb_____
Jeremy Tubb